Eastern District of Kentucky
F I L E D

JAN 2 8 2013

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION CASE ___/3-8- ART

AMY JERRINE MISCHLER,
      Plaintiff,

V.

JONAH LEE STEVENS,
DAVID DESKINS,
ANNA PINSON,
J. GILLESPIE,
CLAUDIA KING,
LARRY THOMPSON,
JULIE PAXTON,
JOHN DAVID PRESTON,
JANIE WELLS,
GLENN E. ACREE,
JOY A. MOORE,
LAURENCE V. VANMETER
JOHN MINTON,
JOSEPH LAMBERT,
LAURIE DUDGEON,
ESTATE OF GLEMA STEVENS,
ANN SWAIN,
DEBBIE REYNOLDS,
STEPHEN C. WOLNITZEK,
      Defendants.

## INTRODUCTION

Gross judicial misconduct in the state courts of the Commonwealth of Kentucky took place to hold sham simulated legal proceedings by a judge without jurisdiction to protect a local attorney practicing in Pike County Kentucky and deny a non-attorney her parental rights and rights to access to the courts both protected under the 14th Amendment of the United States Constitution.

Multiple attempts for redress of the judicial misconduct and denial of access to the state courts have taken place for years for both a factual finding that the sham proceedings were void ab initio and for accountability of the state actors involved in the fraud. The State Courts of

Kentucky refuse to give any redress; so great is the refusal to give redress that the Kentucky Court of Appeals falsified its denial order. Federal intervention is necessary where such a state court system has become lawless.

Plaintiff, Amy Jerrine Mischler on her own behalf, pro se brings this action for deprivation of her constitutional rights under color of law, 42 U.S.C. § 1983, 42 U.S.C. § 1986, 42 U.S.C. 1985 and supplemental state law claims, requests declaratory of rights pursuant to Kentucky Revised Statute 418.04.

Plaintiff alleges as follows:

## PARTIES

1. Amy Jerrine Mischler, the Plaintiff is a resident and domiciliary at 1120 Palm Court Okeechobee, Florida since December 2010.

2. Jonah Lee Stevens, physical business address is 17 Caroline Ave, Pikeville, Kentucky 41501. His mailing address is PO Box 661, Pikeville, KY 41502 according to his membership in the Kentucky Bar Association.

3. David Deskins is the former Pike County Circuit Court Clerk. Deskins is served at the Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601. Deskins is sued in his individual and official capacity for both declaratory and injunctive relief as well as damages.

4. Anna Pinson is the current Pike County Circuit Court Clerk. Pinson is served at the Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601. Pinson is sued in her individual and official capacity for both declaratory and injunctive relief as well as damages.

5. J. Gillespie is a deputy clerk of the Pike County Circuit Court Clerks office. King knowingly entered documents that had no legal authority as binding orders in Ms. Mischler's cases. King is served at the Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601. King is sued in her individual and official capacity for both declaratory and injunctive relief as well as damages.

6. J. Gillespie is a deputy clerk of the Pike County Circuit Court Clerks office. Gillespie knowingly entered documents that had no legal authority as binding orders in Ms. Mischler's cases. Gillespie served at the Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601. Gillespie is sued in her individual and official capacity for both declaratory and injunctive relief as well as damages.

7. Larry Thompson is the current Pike County Family Law Judge. Thompson is sued for declaratory and injunctive relief for his judicial actions and for damages for actions taken outside of his judicial function. Thompson is sued in his individual and official capacity. Thompson is served at the Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

8. Julie Paxton is the former family law judge for Floyd County. Paxton has no judicial immunity because she lacked jurisdiction in three separate cases concerning Ms. Mischler. Paxton immunity is questioned in a fourth case where her staff acted outside the scope of judicial duties. Paxton is sued in her individual and official capacity for damages, declaratory, and injunctive relief. Paxton is served at the Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

9. John David Preston is a circuit court judge for Johnson County. Preston has judicial immunity in one case but no judicial immunity in a second case involving Ms. Mischler. Preston

is sued in his individual and official capacity for damages, declaratory and injunctive relief. Preston is served at the Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

10. Janie Wells is a family circuit court judge for Johnson County. Wells has no judicial immunity because she never was assigned to the cases involving Ms. Mischler. Wells is sued in her individual and official capacity for damages, declaratory and injunctive relief. Wells is served at the Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

11. Glenn E. Acree is the Chief Judge of the Kentucky Court of Appeals. He is sued in his official and individual capacity for declaratory and injunctive relief. Acree is served at the Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

12. Joy A. Moore is a Judge of the Kentucky Court of Appeals. She is sued in her official and individual capacity for declaratory and injunctive relief. Moore is served at the Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

13. Laurence V. VanMeter is a Judge of the Kentucky Court of Appeals. He is sued in his official and individual capacity for declaratory and injunctive relief. VanMeter is served at the Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

14. John Minton is the Chief Justice of the Supreme Court of Kentucky. He is sued in his administrative, official, and individual capacity for damages, declaratory and injunctive relief. Minton is served at Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

15. Joseph Lambert is the former Chief Justice of the Supreme Court of Kentucky. He is sued in his administrative, official, and individual capacity for damages, declaratory and injunctive relief. Lambert is served at Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

16. Laurie K. Dudgeon is the director of the Administrative Office of the Courts. She is sued in her administrative, official, and individual capacity for damages, declaratory and injunctive relief. Dudgeon is served at Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

17. The Estate of Glema Stevens is responsible for the actions of Glema Stevens, obtaining what can only be described illegally gaining de facto custody of Ms. Mischler's children through the actions of her son Jonah Stevens. The executor of her estate is attorney Jonah Stevens. His physical business address is 17 Caroline Ave, Pikeville, Kentucky 41501. His mailing address is PO Box 661, Pikeville, KY 41502 according to his membership in the Kentucky Bar Association.

18. Anne Swain is the in house attorney for the Kentucky Court of Appeals. She is sued in her administrative, official, and individual capacity for damages, declaratory and injunctive relief. Dudgeon is served at Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

19. Debbie Reynolds is the administrator of the Kentucky Senior Judge Program. She is sued in her administrative, official, and individual capacity for damages, declaratory and injunctive relief. Reynolds is served at Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

20. Stephen c. Wolnitzek is the chairman of the Kentucky judicial conduct commission. He is sued in his administrative, official, and individual capacity for damages, declaratory and injunctive relief. Wolnitzek is served at Kentucky Office of the Attorney General at 700 Capitol Avenue, Suite 118, Frankfort, Kentucky 40601.

## JURISDICTION AND VENUE

21. This action arises under the Constitution and laws of the United States and under the constitution and the laws of the Commonwealth of Kentucky. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over Plaintiffs state claims pursuant to 28 U.S.C. § 1376. Last, the Plaintiff as a citizen of Florida has diversity jurisdiction from the defendants under 28 USC § 1332 and the damages denying her access to the courts and her parental rights exceed the threshold amount.

22. This action arose from occurrences which took place in Pike, Floyd, Franklin and Fayette Counties in Kentucky. Venue in this Federal Court, located in Fayette County is proper pursuant to 28 U.S.C. § 1391(b).

## RELEVANT RULE OF LAW

23. *"Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this even prior to reversal."* Old Wayne Mut. I. Assoc. v McDonough, 204 U.S. 8, 27 S.Ct. 236 (1907);

Williamson v Berry, 8 How. 495, 540, 12 L.Ed. 1170, 1189 (1850); Rose v Himely, 4 Cranch 241, 269, 2 L.Ed. 608, 617 (1808).

24. A judgment entered by a court without subject matter jurisdiction is void ab initio. See Covington Trust Co. of Covington v. Owens, 278 Ky. 695, 129 S.W.2d 186, 190 (Ky. 1939); Wagner v. Peoples Bldg. & Loan Ass'n, 292 Ky. 691, 167 S.W.2d 825, 826 (Ky. 1943); Commonwealth Health Corp. v. Croslin, 920 S.W.2d 46, 48 (Ky. 1996); 20 Am.Jur.2d Courts § 65 at 380. *A void judgment is not entitled to any respect or deference by the courts.* Mathews v. Mathews, 731 S.W.2d 832, 833 (Ky.App. 1987). *It is "a legal nullity, and a court has no discretion in determining whether it should be set aside."* Foremost Ins. Co. v. Whitaker, 892 S.W.2d 607, 610 (Ky.App. 1995). *In addition, since subject matter jurisdiction concerns the very nature and origins of a court's power to act at all, it "cannot be born of waiver, consent or estoppel[.]"* Nordike v. Nordike, 231 S.W.3d 733, 738 (Ky. 2007)(internal quotation marks and citation omitted). S.J.L.S. v. T.L.S. NO. 2006-CA-001730-ME, Kentucky Court of Appeals.

**25. Kentucky Revised Statute 26A.015 Disqualification of justice or judge of the Court of Justice, or master commissioner.**

(2) Any justice or judge of the Court of Justice or master commissioner shall disqualify himself in any proceeding:
(a) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings, or has expressed an opinion concerning the merits of the proceeding;
(b) Where in private practice or government service he served as a lawyer or rendered a legal opinion in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter in controversy, or the judge, master commissioner or such lawyer has been a material witness concerning the matter in controversy;
(c) Where he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a pecuniary or proprietary interest in the subject matter in controversy or in a party to the proceeding;

(d) Where he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

    1. Is a party to the proceeding, or an officer, director, or trustee of a party;

    2. Is acting as a lawyer in the proceeding and the disqualification is not waived by stipulation of counsel in the proceeding filed therein;

    3. Is known by the judge or master commissioner to have an interest that could be substantially affected by the outcome of the proceeding;

    4. Is to the knowledge of the judge or master commissioner likely to be a material witness in the proceeding.

(e) Where he has knowledge of any other circumstances in which his impartiality might reasonably be questioned.

(3) (a) Any justice or judge of the Court of Justice disqualified under the provisions of this section shall be replaced by the Chief Justice.

## 26. Kentucky Revised Statute 26A.020 Designation of retired justice or judge as special judge.

(1) When, from any cause, a judge of any Circuit or District Court fails to attend, or being in attendance cannot properly preside in an action pending in the court, or if a vacancy occurs or exists in the office of circuit or district judge, the circuit clerk shall at once certify the facts to the Chief Justice who shall immediately designate a regular or retired justice or judge of the Court of Justice as special judge. If either party files with the circuit clerk his affidavit that the judge will not afford him a fair and impartial trial, or will not impartially decide an application for a change of venue, the circuit clerk shall at once certify the facts to the Chief Justice who shall immediately review the facts and determine whether to designate a regular or retired justice or judge of the Court of Justice as special judge. Any special judge so selected shall have all the powers and responsibilities of a regular judge of the court.

27. Kentucky Circuit Court Clerks' Manual

Page 444

Special Judge Appointment KRS 26A.015; 26.020
1. If a special judge needs to be appointed . . . the chief regional district or circuit court judge who will appoint a special judge be written order.

    Exception

    a. If there is a recusal motion/affidavit filed pursuant to KRS 26A.020 . . .

    . . . send a certified copy of the recusal motion/affidavit directly to the: Chief Justice of the Supreme Court.

b. If there has been a recusal motion/affidavit filed pursuant to KRS 26A.015, do not forward to the Chief Justice. File the motion and schedule for hearing before the presiding judge.

4. Under no circumstances should the original file be removed from your office except as outlined in CR 79.05

## FACTUAL BASIS

## PROLOGUE

28. Jonah Lee Stevens, hereinafter Stevens represented his wife/client Amy Jerrine [Stevens] Mischler in a civil suit against the Floyd County Board of Education. [99-CI-742 Floyd County/99-CV-339 Eastern District of Kentucky Federal Court] Another attorney, Jo Ellen McComb represented Mischler in a prior suit against the Floyd County Board of Education. [97-CI-997 Floyd County].

29. McComb uncovered discovery showing that then Representative Greg Stumbo, later Attorney General Greg Stumbo, and now Representative Greg Stumbo ordered that the Floyd County Board of Education to discriminate against all out of county residents, such as Mischler in a forced reduction in force by the Floyd County Board of Education.

30. Stevens, having a sexual affair with Berniadean Dotson, the wife of oxycotin addict Mark Dotson, a client of Stevens; made a deal with Stumbo to settle both cases for substantially less, cut out attorney fees for McComb, and hide the information of Stumbo discriminating against out of county residents from the public IN RETURN for Stumbo guaranteeing that Stevens would always retain control of the children of Stevens and Mischler's marriage.

31. Stevens settled Mischler's cases without her permission or knowledge while also failing to disclose his adulterous relationship.

32. When Stevens filed for divorce, he filed falsely pretending to be "Lee Stevens" represented by a separate person, "Jonah Stevens" with TWO DIFFERENT SIGNATURES".[1] Judge Larry Thompson, herein after Thompson was fully aware of Stevens fraud upon the Court in 01-CI-1197 but as promised by Greg Stumbo; Thompson facilitated Stevens fraud upon the Court.

## DOMESTIC VIOLENCE PETITION 02-D-00202-001

33. Stevens, having severe weight loss from his own drug addiction committed domestic violence against Mischler by spitting in her face on July 21, 2002. Scared of Stevens, his physical actions, and his threats against her; Mischler the next day filed a domestic violence petition against Stevens in the Pike County Circuit Court Clerks office.

34. The petition filed was given the case number of 02-D-00202-001. See Exhibit 2 which is the case history of 02-D-00202-001 produced by the Pike County Circuit Court Clerks computers.

35. Exhibit 3 is the order by Thompson recusing from 02-D-00202-001.[2]

36. Thompson recused pursuant to KRS 26A.015 but did not circle a, b, c, d1, d2, d3, d4, or e.

37. KRS 26A.015 requires that the circuit court clerk contact the Chief Judge of the Supreme Court. However, a December 1, 1983 Supreme Court order changed the procedure. That order is not available on the Kentucky Administrative Office of the Courts Website and a request of that order has been made to the Kentucky Administrative Office of the Courts and the

---

[1] See Exhibit 1. Please note, that the same Jonah Lee Stevens who committed fraud in this document pretending to be two different people is a practicing attorney in good standing in the Eastern District of Kentucky Federal Courts.
[2] Please note that Defendant King tampered with the date on Exhibit 3 writing 25 over the 30 which was the date of the stamp.

Kentucky Archives. Neither organizations have forwarded a copy of this 1983 order to the plaintiff though actually requested to see what specifically that order states.

38. The Kentucky Administrative Office of the Courts wrote policy in the procedure of KRS 26A.015 in the Kentucky Circuit Court Clerks manual which is provided as Exhibit 4.

39. The Clerks manual specifies that it is the clerk's duty to handle the contacting of the Chief Justice or chief regional judge and that an order granting jurisdiction of a subsequent judge must be filed in the case.

40. IN KNOWING VIOLATION OF LAW AND PROCEDURE, Exhibit 2 unambiguously shows that Thompson took it upon himself to act as the "circuit court clerk" and mailed his withdrawal to Judge Paxton without sending it to the regional judge. See Exhibit 2, date 7/25/2002.

41. There is no order in case 02-D-00202-001 granting Judge Julie Paxton, hereinafter Paxton jurisdiction in 02-D-00202-001 although clearly Kentucky law and the Circuit Court Clerks manual clearly mandate that such an order must be filed before Paxton has jurisdiction or legal authority to enter a ruling in 02-D-00202-001.

42. Paxton is a close political ally of Greg Stumbo. Paxton, Thompson, Stumbo, and Stevens knew that Paxton were to further the fraud and make sure that Stevens controlled his children in the courts through Stumbo's political connections.

43. Further, the purpose of not entering an order in the case file was for the Pike County Circuit Court Clerk to hide the existence of the Domestic violence petition against attorney Stevens from the Administrative Office of the Courts.

44. Paxton, knowing she had no jurisdiction or legal authority filed an order setting a hearing on 8/2/2002. See Exhibit 2. Mischler has never been given a copy that order. However,

Deskins and whatever deputy clerk of the Pike County Circuit Court Clerk placed the order in 02-D-00202-001 knowing that Paxton had jurisdiction or legal authority to file such order and continued the fraud upon the court.

45.  Mischler hired and paid Attorney Sid Trivette to represent her in 02-D-00202-001.

46.  Upon Sid Trivette entering an appearance in 01-CI-1197; Stevens typed up a letter and had his mother, Glema Stevens sign the letter claiming that Trivette had a conflict of interest. Glema Stevens, received disability known as SSI from the federal government for severe mental instability had no competency to write, type or sign such letter.

47.  Sid Trivette did not show up at the hearing on 8/5/2002 and later refunded Mischler's deposit with a copy of the letter prepared by Stevens.

48.  Paxton held a sham legal hearing without jurisdiction or legal authority fully well knowing as a state judge of Kentucky her order was void ab initio under Supreme Court case law.  Paxton, without any authority dismissed Mischler's petition and facially granted custody of Mischler's children to Glema Stevens.  See Exhibit 5.

49.  Paxton specifically stated that the "Parties' minor children shall remain at the at the Respondent's mother's home", giving Glema Stevens de facto custody when Paxton had no legal authority to order such and Mischler did not give permission as such.[3]

50.  J. Gillespie entered the September 23, 2002 by Paxton into 02-D-00202-001 although Gillespie and her supervisor Deskins both knew that Paxton had no jurisdiction or legal authorization to issue such order in 02-D-00202-001 and that Gillespie and Deskins were both tampering with the case files and causing fraud upon the court by such actions giving the facial appearance as if Paxton had jurisdiction.

---

[3] The "at the at the" grammar error is Paxton's.  See Exhibit 5.

51. Deskins allowed Paxton to use her judicial staff to act as circuit court clerk staff and Paxton to be the physical custodian of Mischler's records in 02-D-00202-001 including keeping the video record in Paxton's personal judicial chambers.

52. Paxton destroyed the video record in 02-D-00202-001 to cover up her crime by ruling without jurisdiction in 02-D-00202-001.

53. Attorney Stevens knew that Paxton had no jurisdiction in 02-D-00202-001 and that the proceedings were a sham, unenforceable, void ab initio all to benefit Stevens.

54. Showing he had knowledge of the fraud upon the court; Stevens memorialized in an August 10, 2004 fax stating that "Family Court has jurisdiction in this matter" and that Mischler was "unilaterally change the children's schedule in violation of the Court's order". Stevens knew Paxton had no jurisdiction to issue the September 23, 2002 order changing child custody to Glema Stevens stated as "Granny" in the fax. See Exhibit 6.

55. Mischler noticed Chief Justice Lambert that Paxton was having her personal Court Administrator Dovie Damron act as circuit court clerk, was keeping court video's in her judges chambers as the custodian, and that there were missing video tape records.[4]

56. Off the record, Chief Justice Lambert ordered Paxton to recuse but took no administrative steps to supervise and investigate the constitutional harms Paxton had done to Mischler.

57. Paxton recused from 02-D-00202-001 on September 12, 2006. See Exhibit 7. The Caption is very clear that Paxton recused from 02-D-00202-001.

58. Showing that Paxton knew the proper procedure; her order was certified to the Chief Regional Judge to assign a judge.

---

[4] Mischler was unaware that Paxton did not have jurisdiction in 02-D-00202-001 and that it was a sham proceeding without legal validity. Further, Paxton retaliated to keep her wrong doing secret in 02-D-00202-001 by convicting Mischler of domestic violence for marching in public with a sign years later in 02-D-00202-003 [April 2006].

59. Although the caption is very clear on Exhibit 7 that Paxton recused from 02-D-00202-001; the order was not entered in 02-D-00202-001. See Exhibit 2, a print-out generated on 4/14/2009 well after the order was signed.

60. Chief Regional Judge John Caudill in his order dated September 21, 2006 with a clear caption of 02-D-00202-001 assigned Judge Preston to 02-D-00202-001. See Exhibit 8.

61. Claudia King, continuing the fraud did not enter the order with the caption clearly 02-D-00202-001 in case 02-D-00202-001. Instead, Claudia King entered the 02-D-00202-001 in a different case. King entered the order in 02-D-00202-003 to continue the fraud upon the court. See Exhibit 9.

62. Preston continued the fraud upon the court acting as if he was assigned to 02-D-00202-003 even issuing an order vacating the domestic violence finding against Mischler although he knew his order was facial and had no legal authority.

63. Mischler reported the tampering of her case files to the Administrative Office of the Courts. Jason Nemes, then director falsely stated that AOC does not oversee circuit court clerks. See Exhibit 10.

64. A notice was sent to Chief Justice Lambert on May 1, 2007. See Exhibit 11.

65. Nemes responded to the May 1, 2007 letter stating that there was nothing that the Administrative Office of the Courts or the Chief Justice could do about the tampering of Mischler's case files. See Exhibit 12.

66. Further, Ms. Mischler had requested an investigation for the tampering of her case files a year earlier in 2006. See Exhibit 13.[5]

---

[5] Ms. Howard told Mischler to contact the free legal aid programs. However, Mischler had requested legal assistance multiple times from the Appalachian Legal Research Fund which said that although she met poverty levels necessary for legal aid, that her case did not fit the type of cases that they were taking at that time. Mischler

67. In December 2012 Mischler called the Administrative Office of the Courts General Counsel and inquired how she could file a complaint against a circuit court clerk. Mischler was told the same C.J. Howard of Exhibit 13 that she had to write a complaint and send it to general counsel of the Administrative Office of the Courts.

68. Mischler noticed Mark Heriault, the AOC General Counsel of a communication that she sent to new Pike Circuit Court Clerk Anna Pinson and noticed Heriault that there were no orders in multiple cases giving multiple judges jurisdiction, yet that those judges had ruled without jurisdiction and denied Mischler due process and equal protection under the 14th Amendment of the United States Constitution. See Exhibit 14.

69. Showing that former Chief Justice Lambert had legal authorization from the Kentucky Constitution to address the tampering of Mischler's case files including 02-D-00202-001 in 2006 and 2007 when she requested administrative redress; Chief Justice Minton and General Counsel Mark Heriault created on January 9, 2013 a circuit court clerk conduct commission which the Chief Justice has final authority to discipline circuit court clerks, like Chief Justice Lambert **COULD HAVE DONE YEARS AGO** in Mischler's cases but falsely stated through Nemes that there was no administrative redress through the Administrative Office of the Courts and the Chief Justice office. Such authority was already given under Section 110(5)(b) and 116 of the Kentucky Constitution. See Exhibit 15.

70. Mischler also sought administrative redress from the Judicial Conduct Commission, hereinafter the JCC.

71. The JCC under chair Wolnitzek denied Mischler administrative redress.

---

also contacted the Louisville Legal aid office while she lived in Louisville. Louisville said the case was outside of their area and to contact the Appalachian Legal Research Fund.

72. The JCC fully knew that Thompson acted as circuit court clerk in 02-D-00202-001 by mailing the case files to Paxton to hold sham legal proceedings without legal authorization or jurisdiction. In the JCC words, Paxton and Thompson's actions were not misconduct and did not violate the provisions of the Code of Judicial Conduct even though Paxton and Thompsons actions were clearly in violation of Kentucky law and policy.

73. In short, state Kentucky judges can hold simulated sham legal proceedings without no jurisdiction and this is not a violation of the Kentucky Code of Judicial Conduct according to the Judicial Conduct Commission. See Exhibit 16.

74. As a collateral matter; Mischler can show that Wolnitzek is receiving money to his private law firm of judicial misconduct with associates reviewing cases and telling private citizens that there is no judicial misconduct and no cause of action when clearly there is serious misconduct on the part of state court judges. This appears as if the JCC is being used for Racketeering by Wolnitzek.

75. Being it's difficult to prove that something does not exist; Ms. Mischler requested multiple times copies of orders granting Paxton jurisdiction in her case from Pike County Circuit Court Clerk David Deskins.

76. Deskins responded on 7-27-11 that he could not copy something the case file did not have a copy of "even if you [Mischler] feel like we should have it". See Exhibit 17. In contrast, Exhibit 4, the Circuit Court Clerks manual specifically states that there must be a copy of the order granting the special judge jurisdiction in the case file.[6]

77. Mischler again, seeking redress specifically requested the orders granting Paxton jurisdiction in 02-D-00202-001 and sent a carbon copy to Chief Justice Minton of the request.

---

[6] Mischler was requesting a copy of the order granting Paxton jurisdiction which Deskins implied was not necessary although the Clerks manual is clear that it must be AND REMAIN in the case file.

This time Deskins admitted that there was no order in 02-D-00202-001 granting Paxton jurisdiction. Again, Deskins implied that because there was an order granting Paxton jurisdiction in 02-D-00202-003 [filed April 2006] that it somehow granted backdated jurisdiction to Paxton in 02-D-00202-001 [filed in June 2002]. See Exhibit 18.

78. Chief Justice Minton was on notice from the carbon copies of requests sent to Deskins from Mischler that Paxton did not have jurisdiction in 02-D-00202-001 and that she and others denied Mischler due process and equal protection under the 14th Amendment of the United States Constitution.

79. Mischler files for redress with the Kentucky Court of Appeals for a writ of mandamus filed as 2011-CA-1424.

80. Exhibit 18, 2, and 3 of this complaint were attached as exhibits for the writ.

81. Court of Appeals attorney Ann Swain was designed in the record as being "responsible" for Mischler's writ 2011-CA-1424.

82. Ann Swain falsified the order she drafted for Acree, Moore and VanMeter.

83. Ann Swains falsified drafted order signed by Acree, Moore, and VanMeter without the Court of Appeals verifying the information; Ann Swain falsified the order stating writ 2011-CA-1424 arose from action 02-D-00202. This is clearly false. See Exhibit 2 which clearly shows the caption is 02-D-00202-001. Compare to Exhibit 19.

84. Swains claimed in her drafting that 2011-CA-1424 and 2011-CA-1586 arose from the SAME CASE, 02-D-00202. See Exhibit 19. However, Pike County 02-D-00202 does not exist. 2011-CA-1424 arose from 02-D-00202-001 and 2011-CA-1586 arose from 02-D-00202-002.

85. 02-D-00202-001 and 02-D-00202-002 are very different cases both procedurally and in the case history. In 02-D-00202-001; Mischler petitioned for protection after Stevens spit in her face on July 21, 2002. 02-D-00202-002 is a petition Stevens filed after being served with 02-D-00202-001; Stevens claimed that Mischler was going to commit domestic violence against him in the future on August 5, 2002. THESE ARE VERY DIFFERENT CASES.

86. Swain falsified the caption in 2011-CA-1424 stating that Thompson and Hatfield were Respondents. Neither Thompson nor Hatfield were respondents in 2011-CA-1424. Acree, Moore, and VanMeter knew this but signed off on the order despite the serious defects in the caption. See Exhibit 19.

87. Swain falsified her draft stating that ancient case not found on the search engines provided from the Administrative Office of the Courts; Swain falsified that Foster v. Clerk of Lyon Circuit Court 254 S.W.2d 942 (Ky.1953) said *"does not extend to issuing a mandamus against a circuit clerk even if named, for he is but a ministerial officer"*. See Exhibit 19.

88. Swain intentionally left out the most important part of the quote which is *"Sec. 110, Constitution, does not extend to issuing a mandamus against a circuit clerk, even if named, for he is but a ministerial officer"*. See Exhibit 20

89. The reason Swain intentionally left out Sec. 110 of the Kentucky Constitution is because Section 110 of the Kentucky Constitution does not even mention circuit court clerks and clearly Foster is bad case law that should not be cited to.[7]

---

[7] Kentucky Constitution 110 in its entirety. 1) The Supreme Court shall consist of the Chief Justice of the Commonwealth and six associate Justices. (2) (a) The Supreme Court shall have appellate jurisdiction only, except it shall have the power to issue all writs necessary in aid of its appellate jurisdiction, or the complete determination of any cause, or as may be required to exercise control of the Court of Justice. (b) Appeals from a judgment of the Circuit Court imposing a sentence of death or life imprisonment or imprisonment for twenty years or more shall be taken directly to the Supreme Court. In all other cases, criminal and civil, the Supreme Court shall exercise appellate jurisdiction as provided by its rules. (3) A majority of the Justices of the Supreme Court shall constitute a quorum for the transaction of business. If as many as two Justices decline or are unable to sit in the trial of any cause, the Chief Justice shall certify that fact to the Governor, who shall appoint to try the particular cause a sufficient number

90. Mischler filed a motion to reconsider based on all the issues she raised herein in paragraphs 82 through 89 filed timely with the Kentucky Court of Appeals.

91. Mischler discovered that Preston was appointed to 02-D-00202-001 and not 02-D-00202-003 as he pretended. Mischler worried on how this would complicate 2011-CA-1424; so Mischler faxed a copy of a motion/notice regarding her discovery to Ann Swain.

92. The same day Acree issued an order denying the motion to reconsider **after** Ann Swain received the fax.

93. Acree never addressed any the issue raised in the motion to reconsider. See Exhibit 21.

94. Mischler noticed Preston that he didn't have jurisdiction in 02-D-00202-003 but in 02-D-00202-001.

95. Again, in violation of the rules when Preston moved by election to a different judicial bench; Judge Wells without being assigned to any case of Mischler's acted as if she, Wells had jurisdiction. This despite the rules requiring Preston to withdraw by order and a subsequent judge being assigned by the regional judge; again, judges were ruling in Mischler's cases without jurisdiction. See Exhibit 4.

---

of Justices to constitute a full court for the trial of the cause. (4) The Court of Appeals districts existing on the effective date of this amendment to the Constitution shall constitute the initial Supreme Court districts. The General Assembly thereafter may redistrict the Commonwealth, by counties, into seven Supreme Court districts as nearly equal in population and as compact in form as possible. There shall be one Justice from each Supreme Court district. (5) (a) The Justices of the Supreme Court shall elect one of their number to serve as Chief Justice for a term of four years. (b) The Chief Justice of the Commonwealth shall be the executive head of the Court of Justice and he shall appoint such administrative assistants as he deems necessary. He shall assign temporarily any justice or judge of the Commonwealth, active or retired, to sit in any court other than the Supreme Court when he deems such assignment necessary for the prompt disposition of causes. The Chief Justice shall submit the budget for the Court of Justice and perform all other necessary administrative functions relating to the court. **Text as Ratified on: November 4, 1975, effective January 1, 1976. History: Repeal and reenactment proposed by 1974 Ky. Acts ch. 84, sec. 1; original version ratified August 3, 1891, and revised September 28, 1891.**

96. Wells filed an order certifying a need for a special judge assignment in 02-d-00202-001. See Exhibit 22. Exhibit 2 clearly shows that Wells has never had jurisdiction in 02-D-00202-001 and there is no order assigning her.

97. King entered Wells order as if Wells had authority to enter the order in 02-D-00202-001 although clearly Wells has no jurisdiction or authorization to enter such order.

98. The Court of Appeals clerk stated that they did not receive the notice of Appeal in 2011-CA-1424 but did in 2011-CA-1586. Mischler has filed a motion for extension of time to file notice of appeal along with a second set of notices and motions. The online Court of Appeals website does not show that the Court of Appeals has acknowledge receiving them.

99. The senior judge program has no written rules provided to the public on how senior judges are to be contacted or how the judges are assigned.

100. Debby Reynolds will not return phone calls to Mischler on how the assignments of senior judges are neutrally and randomly done.

101. Mischler knows from conversations with a regional clerk that the senior judges pick what cases that they are assigned. Mischler knows that now federally convicted judge Cletus Maricle specifically requested to be on cases in Russell County involving James Faller.

102. Mischler is very fearful that Reynolds and her supervisor Lambert are going to hand select a senior judge to be assigned to 02-D-00202-001 to cover up Lambert's wrongdoing by allowing Paxton's misconduct after the fact and deny Mischler relief.

## COUNT I: STATE COURT JUDGES ACTING AS CIRCUIT COURT CLERKS

103. The entire fraud rests on two judges taking over responsibilities of the circuit court clerk for their own agenda to protect Stevens, a fellow member of the Kentucky Bar Association.

104. Under color of law, Judge Thompson and Paxton acted as circuit court clerks with Thompson mailing the records to Paxton for Paxton to hold sham legal hearings without jurisdiction.

105. Paxton did hold sham legal proceedings without jurisdiction denying Mischler a judge with jurisdiction guaranteed under the due process and equal protection clauses of the 14th Amendment of the US Constitution.

106. Further, the sham legal proceedings were to deny Mischler her parental rights, which did in fact happen which are unenumerated protected rights under the due process and equal protection clause of the 14th Amendment of the US Constitution and cannot be infringed.

107. Judges Thompson, Paxton, and private citizens Stevens, Glema Stevens, were all involved in the fraud upon the court to benefit Stevens and give de facto child custody to Glema Stevens who had no legal right for such standing.

108. In addition, Judge Paxton acted as circuit court clerk keeping the video record in her judicial custody and destroying it; destroying the evidence of her wrongdoing.

109. Pike County Circuit Court Clerk Deskins, under color of law knew it was his duty to protect and preserve the state court record and by knowingly and intentionally failing to do so denied Mischler her due process equal protection rights under the 14th Amendment.

110. Pinson, who took over as the Pike County Circuit Court Clerk knew that the Judge Thompson and Judge Paxton acted as circuit court clerks destroying the video record violating, Kentucky law regarding the assignment of judges. Pinson noticed of the actions, failed to take subsequent action under color of law and continued the deprivation of Mischler's rights under the due process and equal protection clauses of the 14th Amendment.

## COUNT II: NO JURISDICTION OF PAXTON OR WELLS

111. Paxton, under color of law held a sham simulated proceeding in 02-D-00202-001 without jurisdiction or legal authorization under Kentucky law to deny Mischler access to the Courts and her due process and equal protection rights under the 14th Amendment of the US Constitution.

112. Judge Thompson, under color of law along with Stevens, Deskins, and Glema Stevens conspired Paxton's sham simulated legal proceeding without jurisdiction or legal authorization to benefit Jonah Lee Stevens, an attorney and deny Ms. Mischler her 14th Amendment right to due process of law and equal protection where Mischler is not an attorney.

113. King, Gillespie, and Deskins in furtherance of the fraud upon the court with Paxton holding sham simulated legal proceedings without jurisdiction or legal authorization; King, Gillespie, and Deskins all deputy clerks or circuit court clerks filed Paxton's orders in 02-D-00202-001 as if Paxton's order were legally binding knowing that the orders were void ab initio and Paxton had no legal authority. This filing of void ab initio orders by the Clerks of Court denied Mischler her constitutional rights of due process and equal protection guaranteed to her under the 14th Amendment of the United States Constitution.

## COUNT III: DENIAL OF PARENTAL RIGHTS

114. Paxton, under color of law denied Mischler her parental rights to Zachary Don Stevens (Age 11) and Ulysses Tucker Lee Stevens (Age 2) in her order September 2002 issued in 02-D-00202-001 where Paxton knew she had no legal right, jurisdiction or any authorization to do so.

115. Attorney Stevens, Glema Stevens knew that Paxton's order was without jurisdiction and void ab initio and held the order out as enforceable although Attorney Stevens knew it was

not enforceable and a denial of Mischler's parental rights protected under the 14th Amendment of the US Constitution.

116. Thompson, Paxton both judges knew that Paxton's order was void ab initio, with no legal authorization or jurisdiction but conspired to conduct the sham legal proceedings under color of law in 02-D-00202-001 to deny Mischler her parental rights protected under the 14th Amendment of the US Constitution to benefit Stevens, an attorney and fellow member of the Kentucky Bar Association.

117. Deskins, Pinson after the fact, Gillespie, and King all circuit court clerks or deputy circuit court clerks knew that there was no order in the case file of 02-D-00202-001 granting Paxton jurisdiction required under Kentucky law and that Paxton's giving de facto custody of Mischler's children to Glema Stevens was in violation of Mischler's 14th Amendment of the US Constitution to be a parent but under color of law; filed Paxton's orders and kept them in the state court case file as if they were legitimate valid court orders.

## COUNT IV: TAMPERING WITH STATE COURT CASE FILES

118. Mischler has due process and equal protection rights guaranteed by the 14th Amendment that her state case court case 02-D-00202-001 is accurate and un-tampered with.

119. Judge Thompson, under color of law tampered with the state court case files in 02-D-00202-001 when Thompson acted as clerk of court and personally mailed the case file to Judge Paxton for Paxton conduct sham legal proceedings without jurisdiction or notice to the Administrative Office of the Courts that attorney Stevens had committed domestic violence. Thompson knew that he was denying Mischler's right to an un-tampered state court case.

119. King stamped an order by Thompson on the 30 of July then tampered with the document by handwriting 25 over the stamp. This action was under color of law and is

tampering with the case file denying Mischler her 14th Amendment right to an accurate and correct case file that is u-tampered with.

120. J. Gillespie and King, under color of law entered orders from Paxton and Wells in 02-D-00202-001 knowing that neither Paxton or Wells had ever been assigned to 02-D-00202-001 and had no jurisdiction to issue such orders. Entering orders by judges without jurisdiction or authorization in Mischler's case file is denying Mischler her 14th Amendment right to due process and equal protection.

121. King, receiving two orders clearly captioned 02-D-00202-001 but fraudulently entered them in 02-D-00202-003 under color of law, denied Mischler her 14th Amendment right to due process and equal protection of a correct and accurate case file.

122. Deskins and Pinson, after the fact are Gillespie and King's supervisors and were on notice of Gillespie and King's action. Neither Deskins or Pinson took any action to correct Mischler's state case file in 02-D-00202-001, thus denying Mischler her right under the 14th Amendment to a correct and accurate case file.

123. Attorney Stevens knew of the tampering in 02-D-00202-001 but because it personally benefitted him and his mother Glema Stevens took no action to correct the case file.

## COUNT V: REDRESS- JUDICIAL CONDUCT COMMISSION

124. Under color of law, Wolnitzek and the Judicial Conduct Commission denied Mischler her 1st Amendment right to redress and her 14th Amendment due process and equal protections rights when they issued a ruling that Paxton's ruling without jurisdiction in 02-D-00202-001 and Thompson creating the simulated sham proceeding by acting as circuit court clerk mailing the documents to Paxton; were not misconduct, not in good faith, nor in violation of the Code of Conduct.

125. Under prevailing Rule of Law in both the Federal Sixth Circuit and Kentucky; no deference can be given to a ruling in a case by a judge without jurisdiction because the ruling is void ab initio and the judge is a trespasser of the law, having no authorization to act.

126. Wolnitzek and the Judicial Conduct Commission are giving deference to Paxton and Thompson as if their actions were in fact lawful, when the record clearly shows that Paxton has no jurisdiction in 02-D-00202-001 and Wolnitzek and the Judicial Conduct Commission are "whitewashing" unlawful conduct of Kentucky state court judges.

## COUNT VI: REDRESS- CHIEF JUSTICE OF THE SUPREME COURT

127. Under color of law, Nemes wrote on behalf of then Chief Justice Lambert that there was no administrative redress for tampering with the case file in 02-D-00202-001. There was redress available under the Kentucky Constitution which Chief Justice Lambert had duties but chose not to act. Nemes falsifying the letter stating that there was no redress was a denial of Mischler's 1st Amendment right to redress of grievances and her 14th Amendment right to due process and equal protection both under the United States Constitution.

128. Under color of law, now Chief Justice Minton has been noticed of the tampering of the case file in 02-D-00202-001 and the subsequent constitutional harms against Mischler but under color of law; Minton has taken no action whatsoever denying Mischler her 1st Amendment right to redress of grievances and her 14th Amendment right to due process and equal protection under the United States constitution.

## COUNT VII: FALSIFYING COURT OF APPEALS ORDER

129. Swain, under color of law knowingly drafted an order for Acree, Moore, and VanMeter which she knew was fraudulent that 1) created a non-existent case number, 2) named non-respondents as respondents, 3) and used bad case law leaving out the pertinent part of the

quote which was KY Const. 110 and knowing that KY Const. 110 did not prohibit writs against circuit court clerks while writing in the order that the bad case law did hold that writs could not be granted against circuit court clerks. This fraudulent order drafted by Swain denied Mischler her due process and equal protections rights under the 14th Amendment of the US Constitution.

130. Court of Appeals judges Acree, VanMeter and Moore had due diligence to check the accuracy of the order they signed dismissing 2011-CA-1424 in 2012 instead of blanketly agreeing to a falsified order without reading or verifying the information.[8] While with jurisdiction, and therefore immunity; a Court of Appeals Judge is still subject to injunctive and declaratory relief; it is violation of access to the courts with due process and equal protection when Judge Acree, VanMeter, and Moore, under color of law signed a falsified order denying Mischler rights to an accurate and fair hearing when they did not even draft nor read the order they signed to discover the egregious factual and legal mistakes purposely written by Ann Swain to deny Mischler relief due to her under the 14th Amendment due process and equal protection clause.

## COUNT VIII: REDRESS- DENIAL OF MOTION TO RECONSIDER

131. Mischler contacted Ann Swain by fax to show that there was a subsequent order in 02-D-00202-001 that was not filed in 02-D-00202-001 by the Pike County Clerks Office and that this discovery would have implications in 2011-CA-1424.

132. Instead of waiting for the motion to be filed by mail; Ann Swain either on her own without knowledge or authority from Judge Acree or in the alternative, with full knowledge of

---

[8] Clearly none of the Court of Appeals judges read the order drafted by Ann Swain; had they done so, even the briefest cursory inspection of the order would have shown the error where Ann Swain incorrectly listed the respondents in the caption. Such a grave, obvious, and egregious error could have only been overlooked by judges who did not even bother to read or look at the order but blindly signed it, "trusting" Ann Swain. Judges, especially appellate judges have the duty to at least read a dismissal order written by non-judge for them.

Judge Acree immediately the same day filed an order denying Mischler's motion to reconsider addressing Swain serious errors of fact she fraudulently drafted in the dismissal order.

133.    Judge Acree, under color of law, denied the motion to reconsider without addressing the serious substantive and factual errors in the dismissal raised in the motion to reconsider upon Swains receipt and knowledge of additional fraud upon the court uncovered by Mischler and about to be filed in 2011-CA-1424. Judge Acree's knee jerk reaction to the fax sent to Swain noticing of additional fraud upon the court and not addressing the issues raised deprived Mischler of a fair, accurate, neutral and detached judicial officers deciding the motion to reconsider; a right to redress of grievances protected by the 1st Amendment of the US Constitution, and the manner of which Judge Acree's actions took place also denied Mischler her due process and equal protections rights under the 14th Amendment of the US Constitution.

## COUNT IX:  ADMINISTRATION OF THE SENIOR JUDGE PROGRAM

134.    Debby Reynolds worked for former Chief Justice Lambert while he was Chief Justice.

135.    Chief Justice Lambert oversees the senior judge program with Debby Reynolds the administrator of the program.

136.    Not subject to this complaint; Mischler was denied access to the Courts by senior Judge Lewis Nichols who would not set her motions on his senior docket; there are no civil rules promulgated on how the senior judges schedule their cases or how to sit a hearing.

137.    Under Debby Reynolds and former Chief Justice Lamberts overseeing the Kentucky senior judge program;  Reynolds and Lambert knowingly allowed senior judges such as Judge Cletus Maricle to personally select which cases the senior judge had personal interest in adjudicating.

138. Judge Cletus Maricle was also assigned a regional clerk; Doris Callebs who coordinated the setting of hearings in cases in Russell County concerning James Faller who, Maricle personally wanted to try Faller's cases.

139. Former Judge Cletus Maricle is now in a federal penitentiary, convicted of federal crimes where he will serve out the remainder of his life. Further, the affidavits of the federal officers state that Maricle was improperly influencing cases while on the bench denying due process and equal protection under the 14th Amendment to litigants in front of him.

140. Mischler is entitled to the assignment of a neutral and detached judges in 02-D-00202-001.

141. Debby Reynolds and Lambert, under color of law are purposely denying Mischler the assignment of a neutral and detached judge in 02-D-00202-001 to selectively assign a judge that will protect Lamberts failure to act to the wrongdoing in 02-D-00202-001. This personal selection of senior judges with no due process procedure in place written to where it can be inspected by the public is a denial of Ms. Mischler's due process rights under the 14th Amendment of the US Constitution.

142. FURTHER, Reynolds and Lambert assigned Doris Callebs to administer male James Faller cases in Russell County to both Judge Maricle and Judge Gary Payne.

143. Reynolds and Lambert, under color of law, have denied in the past and continued to deny female Mischler, a regional clerk assigned to senior judge assigned in 01-CI-1197 and to be assigned in 02-D-00202-001 and thus depriving Mischler equal protection under the 14th Amendment of the US Constitution.[9]

---

[9] Mischler can show from another case not involving Mischler the improper administration of the senior judge program by Lambert; the senior judge program is used to cover misconduct of judges because the claim that the senior judge is not "biased" although clearly it shown that the senior judge program as currently administered has serious due process issues in its administration. This constitutional question is not raised because the Kentucky

## COUNT X:  REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF  AND DECLARTION OF RIGHTS PURSUANT TO KRS 418.040:  MISCHLER IS ENTITLED TO A JUDGE WITH JURISDICTION WITH AN ORDER IN HER CASE FILE GRANTING THE JUDGE JURISDICTION

144.  There is no order granting Judges Julie Paxton or Janie Wells jurisdiction in 02-D-00202-001.

145.  Under KRS 26A.015 and under the Clerk's manual; it is required for an order from either the Chief Regional Judge under KRS 26A.015 or the Chief Regional Judge pursuant to a 1983 Supreme Court order granting jurisdiction to a judge before a subsequent judge can lawfully enter orders in a case.[10]

146.  Mischler requests that this Court issue a ruling on the state pendant claim under KRS 418.040 that in the administration of justice in a state court of law that it is necessary for the state case file to be accurate and that no subsequent judge after a territorial judges recusal can issue an order nor can such order be filed by the state Clerk of Court unless there is an order from the Chief Judge under KRS 26A.015.

147.  Mischler requests that this Court issue a ruling that there are no orders granting either Julie Paxton and Janie Wells jurisdiction in 02-D-00202-001 and that Defendants Minton, Acree, Moore, VanMeter, and Pinson must immediately address Paxton and Wells filing orders without jurisdiction in 02-D-00202-001 in their respective positions by correcting both the state case file in 02-D-00202-001, the Court of Appeals file in 2011-CA-1424, and creating procedural safeguards that this serious misconduct does not occur again.

---

Legislature has let the senior judge program law expire in the state courts and the issue is somewhat moot due to that expiration.
[10] To reiterate;  the 1983 Supreme Court order is not available online and after requests for a copy; neither the Administrative Office of the Courts nor the Kentucky Archives have provided a copy to Mischler though specifically requested.

## COUNT XI: REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF AND DECLARTION OF RIGHTS PURSUANT TO KRS 418.040: MISCHLER IS ENTITLED TO EQUAL PROTECTION OF THE ADMINISTRATION OF THE SENIOR JUDGE PROGRAM WITH A REGIONAL CLERK ASSIGNED TO HER CASES

148. The assignment of a neutral and detached judicial officer to Mischler cases is required under the 14th Amendment of the US Constitution.

149. Mischler requests that Reynolds and Lambert be required to make a showing to this Court the written due process protections of how senior judges are assigned and how the program is administered to assign the judges impartially without favoritism by either the senior judge requesting the case or Reynolds and Lambert assigning a senior judge to protect Lambert from liability for his neglect as former Chief Justice.

150. Mischler requests that Reynolds and Lambert be required to respond why Mischler, a female was not assigned a regional court clerk to administer Senior Judge Lewis Nichols assignment to 01-CI-1197 and why Reynolds and Lambert did assign, Faller, a male a regional court clerk to administer Senior Judge Cletus Maricle and Senior Judge Gary Payne's assignment in Russell County Kentucky.

151. Mischler requests this Court to order Reynolds and Lambert, or their replacements to neutrally assign a senior judge to 02-D-00202-001 and to assign a regional clerk to administer 02-D-00202-001.

## COUNT XII: REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF AND DECLARTION OF RIGHTS PURSUANT TO KRS 418.040: DOMESTIC VIOLENCE CASES ARE NOT TO BE SUBSTITUTED FOR CHILD CUSTODY HEARINGS

152. Paxton, Thompson, Stevens knowingly substituted the domestic violence proceeding 02-D-00202-001 as a child custody proceeding for motions actually filed in 01-CI1197. The domestic violence law is being abused by attorneys to "game" the system.

153. Mischler requests this Court to issue an injunctive order to the Kentucky State Courts that domestic violence proceedings cannot be substituted for child custody hearings and that the domestic violence proceedings have no legal bearing on child custody unless a jury of peers rules that there is domestic violence [physical assault]. Too much power is concentrated in a single family court judge who are, as shown in this complaint, denying fundamental rights to individuals to politically benefit friends, family, and political allies.

154. Mischler requests this Court to order Chief Justice Minton to enforce this declaration immediately issuing that no child custody order will be issued in a domestic violence case and that past child custody orders issued in domestic violence cases are subject to be challenged upon notice.

## COUNT XIII: TORT OF OUTRAGE

155. Stevens, Paxton, Thompson, and Deskins actions to conspire to hold sham simulated legal proceedings without jurisdiction to illegally change child custody to Glema Stevens, a non-party shocks the conscious, has caused Mischler severe emotional and financial distress and no civil society can tolerate the actions of officers of the Court committing such egregious fraud upon the court.

## JOINT AND SEVERALLY LIABLE

156. All Defendants are joint and severally liable for the conduct of the defendants. Specifically as an example, Jonah Lee Stevens, Glema Stevens, and Julie Paxton the beneficiary of the misconduct and denial of redress is financially responsible for the conduct of Acree, VanMeter, and Moore for signing a falsified Court of Appeals order without reading it; though Acree, VanMeter, and Moore have judicial immunity from the financial damages but not the

declaratory and injunctive relief because they have actual jurisdiction whereas Paxton, a judge has no jurisdiction in 02-D-00202-001.

## PUNITIVE DAMAGES

157.  The Defendants actions in paragraph 1 to 156 are willful, wanton, malicious, and outrageous because they are state court officers of the court held to a higher legal standard and knew at all times that they were in violation of Kentucky law and the most basic jurisprudence principle that a Judge must have jurisdiction before issuing any ruling.  The integrity of the Kentucky judicial branch is so compromised from the circuit court level to the Court of Appeals that the facts alleged herein would be unimaginable but that they are fully supported by 22 Exhibits which conclusively show that Paxton ruled without jurisdiction to illegally give Stevens child custody and that the fraud extended even into the Kentucky Court of Appeals falsifying its order in an attempt to deny Mischler relief.

158.  Such outrageous conduct violating the United States Constitution by the very organization which is vested with the duty to uphold the United States Constitution demands punitive damages to be asserted against the individuals with no immunity and declaratory and injunctive relief against the individuals hiding their wrongful actions under the cloak of immunity.

## NO DEMAND FOR JURY

159.  There is no demand for a jury because there are no issues of material fact for a jury to decided other than the amount of damages.

## OPEN STATE CASES

160.  02-D-00202-001 and 2011-CA-1424 are open state cases.  However, given the fraud upon the court with the Court of Appeals falsifying an order to deny relief; the fraud itself

is ongoing by the judicial machinery requires and necessitates the intervention of the Federal District Court to ensure Mischler's US Constitutional Rights as a citizen of the United States.

## NO STATUTE OF LIMITATIONS ISSUE

161. The denial of Mischler's 1st and 14th Amendment rights of the US Constitution are ongoing and the last act was in December of 2012.

162. Further, when a judge issues a ruling without jurisdiction while facially pretending to have jurisdiction in a case; there is no statute of limitations on this type of fraud upon the court because the ruling is void ab initio and Mischler will be forever entitled the right to access the Courts for a factual finding that Paxton's order have no legal force.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Mischler prays for judgment in her favor and the relief herein requested and in addition for compensatory damages, punitive damages for the outrage conduct, reasonable costs and fees and all other relief that this Court deems necessary, just, and proper.

Respectfully submitted,

Amy Jerrine Mischler
1120 Palm Court
Okeechobee, Florida 34974

1/04/2013