UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE


AMY JERRINE MISCHLER,                    )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )   No.: 7:13-CV-8
                                         )
JONAH LEE STEVENS, et al.,               )
                                         )
            Defendants.                  )


**<u>MEMORANDUM OPINION AND ORDER</u>**


        Plaintiff has filed a complaint against Defendants alleging that she has been denied

access to a fair and impartial court system by the Kentucky state courts.  Currently

pending before the Court are various motions to dismiss and/or for summary judgment

filed by the Defendants.

**I.  Background**

        Jonah Stevens and Amy Mischler were married on July 30, 1991.  Two children

were born of this union, a son born in 1994 and a son born in 1999.  The couple separated

May 30, 2001, and Jonah Stevens filed for divorce.  The parties entered into a separation

agreement which provided that both parents would share joint legal custody.  The

agreement was subsequently incorporated into the divorce decree.

On July 22, 2002, Mischler and Stevens took out cross Domestic Violence Petitions in Pike Circuit Court. The two petitions were consolidated pursuant to Kentucky Civil Rule of Procedure 42.01 and Pike Family Court Local Rule 7. Mischler v. Stevens became 02-D-00202-001 (hereinafter "001") and Stevens v. Mischler became 02-D-00202-002 (hereinafter ("002"). On July 25, 2002, Judge Larry Thompson, Pike Family Court Judge, recused himself from both petitions. Judge Thompson requested that Judge Julie Paxton, a Family Court Judge from Floyd County, serve as Special Judge in the domestic violence cases.

Judge Paxton held a joint hearing on September 9, 2002 and dismissed both petitions. She also vacated a temporary custody order that had removed the children from both parents' homes while the petitions were pending. The record shows that Mischler did not object to Judge Thompson's recusal; she did not appeal the temporary custody order; she did not object to Judge Paxton's assumption of the case; and she did not appeal the dismissal of Petition 001 or Petition 002.

On April 14, 2006, Stevens filed another Domestic Violence Petition against Mischler (02-D-00202-003, hereinafter "003") alleging that she was endangering the welfare of their children. Judge Thompson recused on April 24, 2006, and an order appointing Judge Paxton was signed by Chief Regional Judge John David Caudill. A Domestic Violence Order was issued against Mischler on May 24, 2006. Temporary custody of the children was granted to Stevens. Mischler argued that issuance of the Domestic Violence Order was erroneous and Special Judge John David Preston ultimately agreed. Judge Preston vacated the Domestic Violence Order on December 12,

2006. The record shows that Mischler did not object to the dismissal of the Domestic Violence Order or Judge Preston's appointment and she did not appeal the temporary custody order.

A custody dispute was also ongoing in the parties' divorce proceeding. A custody hearing occurred in the divorce proceeding in Pike Circuit Court before Senior Judge Lewis D. Nicholls. Judge Nicholls interviewed the children, appointed a Guardian ad Litem, required psychological reports, and held a lengthy custody hearing during which Mischler and Stevens were permitted to introduce evidence. Judge Nicholls awarded permanent and full custody to Stevens in an order issued August 6, 2009. The record shows that Mischler did not appeal the custody order.

On April 30, 2008, Mischler filed a 42 U.S.C. § 1983 action against Justice Joseph Lambert, Judge Lewis Nicholls, Judge Larry Thompson, the Kentucky Judicial Conduct Commission, and the Kentucky Bar Association in the United States District Court, Western District of Kentucky at Louisville, Case No. 3:08-CV-231-M. Mischler alleged that the Defendants purposely and intentionally deprived her of the right to redress through the courts based on the 2002 domestic violence cases and her divorce action in Pike County. The District Court granted the Defendants' motions to dismiss and dismissed the case in its entirety. The record shows that Mischler did not appeal.

On August 5, 2011, Mischler filed a petition for Writ of Mandamus against former Pike Circuit Clerk David Deskins in the Kentucky Court of Appeals, Case No. 2011-CA-1424. She alleged, among other things, that Deskins has permitted judges who were not appropriately appointed to file documents in the domestic violence cases. On August 30,

2011, Mischler filed a Petition for Writ of Mandamus against Judge Larry Thompson in the Kentucky Court of Appeals in Case No. 2011-CA-1586. Mischler's primary claim was that Judge Thompson improperly recused and permitted Judge Julie Paxton to serve as Special Judge in her domestic violence case. The Court of Appeals denied both Petitions for Mandamus. The record shows that Mischler appealed the denial to the Kentucky Supreme Court, Case No. 2012-SC-030, where the case is currently pending.

Plaintiff has filed the instant Complaint alleging that the Kentucky judicial system is irreparably broken and thus requires intervention by the federal courts. Plaintiff's Complaint is a collateral attack on the Kentucky state court domestic relations proceedings and contains a long and rambling list of allegations that purport to detail a series of misdeeds allegedly aimed at depriving Plaintiff of her federal constitutional rights through a conspiracy involving numerous officials of the Kentucky courts. Plaintiff seeks to nullify the results of her domestic relations proceedings by seeking a declaration that the rulings made in the Kentucky state court proceedings are void *ab initio.*

## II.  Standard of Review

Defendants have moved for dismissal of plaintiff's Complaint pursuant to Rule 12(b)(6) and Rule 56, Federal Rules of Civil Procedure. A motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of her claims that would entitle her to relief. *Meador v. Cabinet for Human Resources,*

4

902 F.2d 474, 475 (6th Cir.) *cert. denied,* 498 U.S. 867 (1990). The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

If, in a Rule 12(b)(6) motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Wysocki v. IBM*, 607 F.3d 1102, 1104 (6th Cir. 2010). Here, the parties have submitted matters outside the pleadings in support of their positions. Consequently, the court will consider the parties' arguments under Rule 56(c), which provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d

5

941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

## III. Discussion

### A. Claims Against Circuit Court Judges Thompson, Wells, and Preston

Plaintiff alleges in her Complaint that Judges Thompson, Wells, and Preston either filed orders in her case without jurisdiction or committed procedural errors that allowed other judges to do so. Plaintiff's allegations are based on her assertion that a judge cannot preside over a case outside his or her district without a formal order of appointment. Plaintiff sought an emergency protective order against her former husband in Case 001. KRS 403.725(6) allows any Circuit Judge to issue an emergency protective order and requires the same judge to conduct the subsequent hearing:

> When the elected, appointed, or special judge of the district is absent from the district, otherwise unavailable, or unable to act, **any Circuit Judge shall have the authority to issue an emergency protective order pursuant to KRS 403.730 to 403.785.** If a Circuit Judge issues an emergency protective order, except as otherwise provided in this section,

that judge shall conduct the hearing as required by KRS 403.745 and any order issued shall be enforced as provided in this chapter.

(Emphasis added).  KRS 403.725(8) states that any District or Circuit Judge may conduct protective order proceedings if the issuing judge is unavailable:

> Following the issuance of a protective order under this section, if the judge who issued the order is absent from the district, otherwise unavailable, or unable to conduct proceedings regarding the enforcement, violation, or modification of the order within a reasonable time, the proceedings shall be conducted by any District or Circuit Judge.

Here, Plaintiff and her former husband initiated Domestic Violence Petitions 001 and 002 on the same day.  Pike Family Court Judge Larry Thompson recused and Judge Julie Paxton, a Family Court Judge from a neighboring county, took his place pursuant to the provisions of KRS Chapter 403, which statutorily permitted Judge Paxton to serve without appointment.

Plaintiff also claims that Judge Paxton was without authority to enter a temporary custody order in Case 001.  Judge Paxton removed the children from both of their parents' custody and issued a temporary order placing them with their paternal grandmother while the cross domestic violence proceedings were pending.  Judge Paxton had authority, pursuant to KRS 403.740(1)(f), to issue a temporary custody order based on the best interests of the children.  The Court finds Plaintiff's claims that the Circuit Court Judges filed orders in her case without authority, while other judges permitted this to happen, are without merit.

Plaintiff also seeks injunctive relief against Judges Thompson, Wells, and Preston in their official capacities pursuant to 42 U.S.C. § 1983 which states that "in any action

brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *See Savoie v. Martin,* 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff's Complaint does not allege that any of the Judges violated a declaratory decree or that declaratory relief was not available. The record shows that none of the three judges has violated a decree issued under the Declaratory Judgment Act, 28 U.S.C. § 2201, and Plaintiff has not alleged that declaratory relief was unavailable to her. Thus, the Court finds Plaintiff's claim for injunctive relief is without merit.

Finally, a lawsuit brought pursuant to 42 U.S.C. § 1983 is subject to a one-year statute of limitations in Kentucky. *Collard v. Kentucky Bd. Of Nursing,* 896 F.2d 179, 182 (6th Cir. 1990). The last action of any of the judicial defendants took place in 2007. Plaintiff did not file the present suit until January 28, 2013, well beyond the one-year statute of limitations. Although Plaintiff claims that she just recently discovered that Judge Preston and Judge Wells did not have jurisdiction over her cases, the statute of limitations begins to run when a person knew or had reason to know of an injury. Plaintiff has been filing lawsuits challenging the jurisdiction of the judicial defendants in her domestic disputes since 2008 when she began alleging that Judge Paxton did not have jurisdiction over her cases. Plaintiff filed two lawsuits in 2008, one in the United States District Court for the Eastern District of Kentucky at Pikeville, and one in Franklin County Circuit Court. Therefore, the Court finds that Plaintiff's argument for tolling the statute of limitations is without merit.

Accordingly, all of Plaintiff's claims against Judges Thompson, Wells, and Preston are hereby **DISMISSED.**

**B. Claims against former Judge Julie Paxton**

On June 26, 2013, the Court entered an order dismissing many of Plaintiff's claims using the screening process set forth in 28 U.S.C. § 1915 for *pro se* complaints. The Court dismissed most causes of action alleged in Judge Paxton's official capacity and dismissed claims for damages under § 1983 in her personal capacity. However, the Court allowed Plaintiff to proceed on her claims for injunctive and declaratory relief in Judge Paxton's official capacity, declaratory relief in her personal capacity, and claims for damages, injunctive relief, and declaratory relief based upon allegations that Judge Paxton destroyed tapes from hearings over which she presided. The Court also allowed Plaintiff to proceed on claims based on the tort of outrage against Judge Paxton as well.

As seen in the previous discussion, in domestic violence cases, Kentucky law allows for a statutory exception to the rule that special judges must be appointed by the judicial branch. In particular, KRS 403.725(6) permits any Circuit Judge to issue an Emergency Protective Order and then requires that same judge to preside over the subsequent hearing. Thus, Judge Paxton clearly had jurisdiction under Kentucky law over the proceedings involving Plaintiff, as she was appointed to serve as a Special Judge in the domestic violence case. Therefore, Judge Paxton is entitled to judicial immunity for any of Plaintiff's allegations against her in her official capacity. *Pierson v. Ray,* 386 U.S. 547, 553-54 (1967).

Next, Judge Paxton argues that any cause of action based upon § 1983 must be dismissed as a result of Plaintiff's failure to file within the applicable statute of limitations. The Court agrees. As stated above, actions brought under § 1983 are subject to a one-year statute of limitations. *Collard,* 896 F.2d at 1982. Judge Paxton states that she left the bench seven years ago and she has had no involvement in any matter involving Plaintiff for many years. Plaintiff's allegations against Judge Paxton stem from her involvement in Plaintiff's domestic violence case in which Paxton ruled against Plaintiff. All of these alleged acts would have occurred in 2006 when Judge Paxton was asked to hear the matter. Judge Paxton recused herself from the case and took no further action in the matter after 2006. Therefore, all claims brought by Plaintiff under § 1983 against Judge Paxton will be **DISMISSED** for failure to bring them within the one-year statute of limitations period.

Plaintiff also alleges that Judge Paxton committed the tort of outrage by holding a "sham" proceeding in her divorce/custody action, causing Plaintiff severe emotional and financial distress. The "sham" proceeding Plaintiff complains about occurred in 2006. The statute of limitations on the tort of outrage in Kentucky is five years. *Craft v. Rice,* 671 S.W.2d 247, 241 (Ky. 1984). Thus, any cause of action based upon the tort of outrage had to be filed no later than 2011, well before the time Plaintiff filed the instant action in January 2013. The Court finds that Plaintiff's claim for the tort of outrage is untimely, and it is hereby **DISMISSED.**

### C. Claims against Judge John D. Minton, Jr. and Judge Joseph E. Lambert

The surviving claims against Chief Justice John D. Minton, Jr. and former Chief Justice Joseph E. Lambert appear to be § 1983 claims for: (a) damages, injunctive, and declaratory relief against former Chief Justice Lambert in his personal capacity; (b) declaratory and injunctive relief against Chief Justice Minton in his official capacity; and (c) damages, injunctive, and declaratory relief against Chief Justice Minton in his personal capacity.

Plaintiff's claims against former Chief Justice Lambert are two-fold. First, the Complaint alleges that former Chief Justice Lambert deprived Mischler of her constitutional rights by failing to act when she notified him of various alleged acts of misconduct by judges and circuit court clerks in connection with Case 001. The second set of claims involve former Chief Justice Lambert's purported failure to assure Plaintiff of the assignment of a neutral and detached judge in Case 001.

Plaintiff's allegations against Chief Justice Minton are that he was on notice of her claims relating to Case 001 and failed to take action, which has denied Plaintiff due process and equal protection under the Fourteenth Amendment of the United States Constitution, and further denied her First Amendment right to redress of grievances. Plaintiff asks that Chief Justice Minton be directed to "correct" the file in Case 001 and to create procedural safeguards against future misconduct.

The Court finds that the claims against Chief Justice Lambert and Chief Justice Minton are barred by the doctrine of claim preclusion. When a court of competent jurisdiction has entered final judgment on the merits in an action, the parties to the suit and their privies are bound by the decision. *Bowman v. Cortellessa,* 2012 U.S. Dist.

11

LEXIS 26189 at *6 (E.D. Ky. 2012).  A party is barred from bringing a claim under the doctrine of claim preclusion where there exists:  (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or should have been litigated in the prior action; and (4) an identity of the causes of action.  *Golden v. C.I.R.,* 548 F.3d 487, 494-95 (6th Cir. 2008).

The record shows that on April 30, 2008, Plaintiff filed a complaint in the District Court for the Western District of Kentucky, Case No. 3:08-CV-231.  In that action, she named as a defendant then Chief Justice Lambert acting in his official capacity.  During the pendency of the action, Chief Justice Lambert retired, and as a result, Chief Justice Minton was substituted as a defendant.  The allegations Plaintiff made in the 2008 Complaint mirror the allegations made here concerning Plaintiff's domestic relations cases.  Plaintiff alleged that the Chief Justice Defendants failed to take action in response to her claims, and she sought injunctive relief against the Chief Justice Defendants requiring the Chief Justice Defendants to enforce Kentucky's rules and regulations in all cases involving Plaintiff.  All claims against the Chief Justice Defendants were dismissed with prejudice by the District Court.  Accordingly, Plaintiff's claims for injunctive relief against the Chief Justice Defendants in their official capacity are barred by claim preclusion and will be **DISMISSED**.

In addition, Plaintiff's claims against the Chief Justice Defendants are barred by the applicable statute of limitations for § 1983 actions.  *See Collard,* 896 F.2d at 182. Plaintiff's Complaint alleges that she put former Chief Justice Lambert on notice of the

12

alleged misconduct on May 1, 2007, over five years before filing her Complaint. Similarly, Plaintiff's allegations against Chief Justice Minton took place prior to August 2011. Accordingly, the Court finds that Plaintiff's claims against the Chief Justice Defendants are untimely.

Last, Plaintiff's claims for injunctive relief against the Chief Justice Defendants are barred by the Eleventh Amendment. Under the Eleventh Amendment, an arm or instrumentality of a state is not amenable to suit in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity or Congress has overridden it. *Whittington v. Milby,* 928 F.2d 188, 193-94 (6th Cir. 1991). Unless immunity is expressly waived, a state and its agencies are immune from an action for damages and injunctive relief. *Campbell v. Univ. of Louisville,* 862 F.Supp.2d 578, 585 (W.D. Ky. 2012). The Commonwealth of Kentucky has not waived its immunity. *Underwood v. Circuit Judge-Justice Ctr.,* 2013 U.S. Dist. LEXIS 32226 at *8 (W.D. Ky. 2013). However, the Supreme Court carved out an exception in a § 1983 case "if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law. *Ex Parte Young,* 209 U.S. 123, 155-56 (1908); *Ernst v. Rising,* 427 F.3d 351, 358 (6th Cir. 2005). The Sixth Circuit has held that injunctive relief pursuant to *Ex Parte Young* may not be sought "when a defendant state official has neither enforced nor threatened to enforce an allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty Inc. v. Deters,* 92 F.3d 1412, 1416 (6th Cir. 1996). In *Children's Healthcare,* the Sixth Circuit found that plaintiffs were not complaining of "action, but inaction" and thus *Ex Parte Young* did not apply. *Id.*

13

Here, Plaintiff complains of inaction by Chief Justice Minton for failing to take action when he was notified of her claims. She does not allege that Chief Justice Minton has threatened to enforce an allegedly unconstitutional statute against her. Accordingly, the Court finds Plaintiff's injunctive relief claims against Chief Justice Minton are barred by the Eleventh Amendment and they are hereby **DISMISSED.**

Plaintiff's damage claims against the Chief Justice Defendants in their personal capacities regarding the appointment of judges in her domestic relations cases are barred by the Doctrine of Absolute Judicial Immunity. *See Depiero v. City of Macedonia,* 180 F.3d 770, 783 (6th Cir. 1999). Courts have consistently held that the act of assigning a judge to a particular case is a judicial function that is absolutely protected by judicial immunity. *Parent v. New York,* 786 F.Supp.2d 516,532 (N.D.N.Y. 2011) (finding that administrative functions such as the assignment of cases are judicial functions protected by judicial immunity).

In addition, Plaintiff's allegations concerning the failure of the Chief Justice Defendants to act in response to her concerns about alleged wrongdoing by lower court judges and circuit court clerks likewise are barred by absolute judicial immunity. *See Brookings v. Clunk,* 389 F.3d 614, 620-21 (6th Cir. 2004); *Barrett v. Harrington,* 130 F.3d 246, 260 (6th Cir. 1997). Accordingly, all claims against Judge John D. Minton, Jr. and Judge Joseph E. Lambert are **DISMISSED.**

### D. Claims against former Circuit Court Clerk David Deskins

On June 26, 2013, the Court entered an order dismissing many of Plaintiff's claims against Defendant Deskins. Specifically, the Court dismissed claims under § 1983

14

in Deskins' official capacity because he is no longer the Pike County Circuit Court Clerk, and also dismissed claims for damages under § 1983, since the administrative act of maintaining court orders is a quasi-judicial function of the Clerk's Office. The Court, however, allowed Plaintiff to proceed on claims asking for declaratory judgment and injunctive relief against Deskins in his personal capacity that are allegedly grounded in § 1983. Also surviving are claims for the tort of outrage, causing Plaintiff "emotional" injuries.

In support of his motion, Deskins states that he left his post as the Circuit Court Clerk in 2012; however, Plaintiff allegations of misconduct actually occurred in 2002 and 2006. Deskins argues that Plaintiff's claims fall outside the applicable statutes of limitations.

The record shows that Plaintiff's accusations of misconduct by Deskins ended in 2011, when Plaintiff makes reference to an alleged conversation she had with Deskins. Moreover, the conduct Plaintiff alleges rises to the level for a § 1983 violation occurred as a result of Deskins' alleged actions in 2006. As stated above, Plaintiff's claims brought under § 1983 are subject to a one-year statute of limitations. *Collard,* 896 F.2d at 1982. Thus, all of the allegations against Deskins fall outside the limitations period. Therefore, all claims brought by Plaintiff under § 1983 against Deskins will be **DISMISSED** for failure to bring them within the statute of limitations period.

Similarly, Plaintiff's claim for the tort of outrage against Deskins is barred by the five-year statute of limitations. *Craft,* 671 S.W.2d at 241. Any cause of action based upon the tort of outrage had to be filed no later than 2011, well before the time Plaintiff

filed the instant action in January 2013.  The Court finds that Plaintiff's claim for the tort of outrage is untimely, and it is hereby **DISMISSED.**

### E.  Claims Against Debbie Reynolds

Defendant Debbie Reynolds is the former Administrator of the Senior Judge Program.  She retired in February of 2013.  Because she is no longer employed by the Administrative Office of the Courts, all claims against Reynolds in her official capacity are **DISMISSED.**

As to the claim against Reynolds in her individual capacity, Plaintiff's Complaint states that Reynolds was an employee of former Chief Justice Lambert and is the Administrator of the Senior Judge's Program.  Plaintiff alleges Reynolds failed to return her phone calls and she fears Reynolds will handpick a judge to "further the vast statewide conspiracy against Plaintiff."  Plaintiff does not allege that Reynolds appointed any of the judges she has named in the present suit.  Plaintiff seeks declaratory and injunctive relief against Reynolds in her capacity as the Administrator of the Senior Judge Program as to future actions.  Reynolds no longer works for the court system and has no role with the Senior Judge Program.  Because the relief requested by Plaintiff is no longer available from Reynolds, all claims against Reynolds in her individual capacity are **DISMISSED.**

### F.  Claims Against the Circuit Court Clerks

Plaintiff alleges that Circuit Court Clerk Anna Pinson and Deputy Clerks Claudia King and Jennifer Gillespie have violated her right to Due Process by filing orders issued by judges that the clerks knew did not have jurisdiction.

First, as stated above, any judge may preside in a domestic violence case pursuant to the provisions of KRS Chapter 403. Therefore, the Circuit Court Judges had authority to issue orders in Plaintiff's case.

Second, Plaintiff's claims assume that a Circuit Court Clerk's ability to file a court order is discretionary. Plaintiff is mistaken. Kentucky Civil Rule of Procedure 58 states in pertinent part:

> (1) Before a judgment or order may be entered in a trial court, it shall be signed by the judge. The clerk, forthwith upon receipt of the signed judgment or order, **shall** note it in the civil docket as provided by CR 79.01. The notation shall constitute the entry of the judgment or order, which shall become effective at the time of such notation.

(Emphasis added). Contrary to Plaintiff's assertion, the entry of an order received from a judge is not at a clerk's discretion. Moreover, a litigant may appeal an order if it is incorrect or if there are jurisdictional issues, but the clerk has a duty to enter it into the record if it is issued by the court. *See Putnam v. Fanning,* 495 S.W.2d 175, 176 (Ky. Ct. App. 1973) ("Once the judgment or order is received by the clerk, the rule requires without condition or exception that it be noted"). Thus, the clerks are required by law to enter an order received by a judge without condition. Because Plaintiff's claims are not supported by law, the Defendant Clerks' motion to dismiss is **GRANTED.**

### G. Claim against Stephen D. Wolnitzek

Defendant Stephen D. Wolnitzek moves to dismiss all claims against him in his individual capacity and as Chairman of the Kentucky Judicial Conduct Commission ("JCC"). The JCC is a state body created by the Kentucky Constitution that has the authority to discipline judges for official misconduct. Plaintiff contends that the JCC

failed to take steps to rectify the harm that the Kentucky Judge Defendants caused her. Specifically, Plaintiff alleges that Wolnitzek and the JCC have violated her rights by failing to act on her complaints and by failing to enforce Kentucky laws, rules, and regulations against the Judge Defendants. Plaintiff asks this Court to order the JCC to investigate her allegations.

First, the Court finds that Wolnitzek is entitled to immunity from liability in this action under the Eleventh Amendment. The Eleventh Amendment prohibits federal courts from adjudicating state law claims filed against a state in federal court. *Ernst,* 862 F.Supp.2d at 585. The JCC is a state body created by the Kentucky Constitution and is "vested with authority to discipline judges for official misconduct." *Kentucky Judicial Conduct Comm'n v. Woods,* 25 S.W.3d 470, 471 n. 1 (Ky. 2000); Ky. Const. § 121; Ky S.Ct. R. 4.020. Thus, the JCC is an instrumentality of the State of Kentucky, and Wolnitzek as Chairman of the JCC, is entitled to the protection of the Eleventh Amendment. Absent a clear waiver by the state of immunity to suit in federal court for the claims asserted herein, Plaintiff's claims against Wolnitzek must be **DISMISSED.**

Second, the Court finds that Plaintiff's claims against Wolnitzek are barred by the one-year statute of limitations applicable to § 1983 actions. *See Collard,* 896 F.2d at 182. Plaintiff complains of JCC inaction regarding the Defendant Kentucky Judges and attaches to her complaint the JCC's letter to her dated September 12, 2011, informing her that it would take no action on her complaint. This action against Wolnitzek was not filed until January 28, 2013, more than one-year after notification to Plaintiff of the last

JCC action on her complaint to the JCC. It is therefore barred by the one-year statute of limitations.

Third, the Court finds that Wolnitzek has absolute judicial immunity from Plaintiff's claims. *See Crenshaw v. Baynerd,* 180 F.3d 866 (7th Cir. 1999) (Officers and agencies that perform quasi-judicial functions are entitled to absolute immunity to protect their decisionmaking function from being impeded by fear of litigation or personal monetary liability). The JCC was functioning in a quasi-judicial capacity in rejecting Plaintiff's complaints against the Kentucky judges. Therefore, Wolnitzek is entitled to absolute judicial immunity from Plaintiff's claims against him.

Last, Plaintiff's claims against Wolnitzek are barred by the doctrine of issue preclusion and *res judicata*. As discussed above, Plaintiff filed an action in the United States District Court for the Western District of Kentucky in 2008. In that action, Plaintiff claimed that the JCC should have disciplined Judges Paxton and Thompson for actions in her domestic relations cases. The Western District dismissed her claims against the JCC, with prejudice. The allegations Plaintiff made in the 2008 Complaint mirror the allegations made here that Wolnitzek/JCC failed to take steps to rectify the harm the state judges caused her. Accordingly, Plaintiff's claims for injunctive relief against Wolnitzek are barred by claim preclusion, and all claims against Wolntizek are **DISMISSED.**

### H. Younger Abstention Doctrine/Domestic Relations Exception

The *Younger* Abstention Doctrine requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state court proceedings.

*O'Neill v. Coughlan*, 511, F.3d 638, 643 (6th Cir. 2008); *Younger v. Harris,* 401 U.S. 37 (1971). Courts in the Sixth Circuit consider three factors in determining whether to abstain from hearing a case based on *Younger* abstention: (1) whether there is an ongoing state judicial proceeding; (2) whether the state judicial proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge. *O'Neill,* 511 F.3d at 643.

First, if a state proceeding is pending at the time the action is filed in federal court, the first criteria for *Younger* abstention is satisfied. *Kelm v. Hyatt,* 44 F.3d 415, 419 (6th Cir. 1995). The record shows that Plaintiff currently has eight (8) cases pending in the Kentucky appellate courts involving Case 002:

1. Kentucky Supreme Court 2013-SC-30: Appeal of denial of Petition for Mandamus against Judge Larry Thompson and Clerk David Deskins (2011-CA-1586.

2. Kentucky Supreme Court 2013-CA-509; original mandamus action against Chief Court of Appeals Judge Glenn Acree based on Court of Appeals denial of mandamus action 11-CA-1424 against Circuit Clerk David Deskins.

3. Kentucky Supreme Court 2013-SC-649

4. Kentucky Supreme Court 2013-SC-650

5. Kentucky Supreme Court 2013-SC-651: filed 9/13/13, original mandamus against Chief Court of Appeals Judge Glenn Acree and Special Judge Robert McGinnis to require Court of Appeals to grant mandamus actions filed on 7/25/13 in Cases 2013-Ca-1300, 1301 and 1302.

6. Kentucky Court of Appeals 2013-CA-1300

7. Kentucky Court of Appeals 2013-CA- 1301

8. Kentucky Court of Appeals 2013-CA-1302; filed 7/25/13, original mandamus against Special Circuit Judge Robert McGinnis seeking order requiring Circuit Court to grant relief sought by Mischler in Case 002.

Second, the State of Kentucky has a strong interest in the resolution of marital disputes and the protection of children involved in child custody matters. The present lawsuit is at heart a custody matter. Plaintiff alleges that the various Defendants conspired to deprive her of custody of her children and violated her constitutional right to parent. Plaintiff's purpose here is to have this Court interject itself into her custody battles so that she may obtain the relief in this Court that she failed to obtain in the Kentucky state courts. Typically, the federal courts refrain from entering domestic relations cases. "Even when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court." *Denman v. Leedy,* 479 F.2d 1097, 1098 (6th Cir. 1973). Further, the Supreme Court has found that "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593-94 (1890). Because state courts historically have decided these matters, they have developed a proficiency and expertise in these cases and a strong interest in disposing of them. *Solomon v. Solomon,* 516 F.2d 1018, 1025 (3d Cir. 1985); *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981). Pursuant to the domestic relations exception, the Court should abstain from second guessing the custody decisions of the Kentucky judges and decline to exercise jurisdiction over Plaintiff's claims.

Third, Plaintiff has the ability to raise any constitutional claims she may have before the Kentucky state courts through the appellate process. The burden on this point rests on the federal plaintiff to show that state procedural law bars presentation of her claims. *See Marathon Petroleum Co. LLC v. Stumbo,* 528 F. Supp. 2d 639, 645 (E.D.Ky. 2007) (citing *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 14 (1987). Plaintiff does not allege that she is barred from presenting her constitutional claims in the Kentucky state courts. In fact, the Kentucky courts can consider the constitutional questions Plaintiff raised in her complaint if they deem them to have merit.

For the foregoing reasons, the Court finds that the *Younger* Abstention Doctrine applies in the present case, and the Court will abstain from considering any claims involving open state court cases.

## I.  Rooker-Feldman Doctrine

To the extent Plaintiff seeks relief with respect to any proceedings in state court that are closed, her claims are barred by the *Rooker-Feldman* Doctrine. Under that doctrine, a federal district court may not sit in direct review of state court decisions and orders. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). The Supreme Court has reiterated that the *Rooker-Feldman* Doctrine applies to "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005).

Here, Plaintiff has had ample opportunity and time to initiate the appellate review process provided for under the Kentucky Rules of Civil Procedure. She has either taken advantage of those opportunities or failed to assert them in her state court matters. Federal courts lack jurisdiction to review a case litigated and decided in state court because only the United States Supreme Court has jurisdiction to change state court judgments. *See Rooker,* 263 U.S. at 415; *Feldman,* 460 U.S. at 476; *Gottfried v. Medical Planning Servs. Inc.,* 142. 326, 330 (6th Cir. 1998).

Plaintiff's Complaint is in substance a request for this Court to review the underlying state court judgments based on her claims that the state judgments themselves violate her federal constitutional rights. Plaintiff's constitutional claims are inextricably intertwined with the underlying state court judgments. The allegations of the instant Complaint arise out of various domestic relations proceedings in the Kentucky state courts. Apparently unhappy with her state court results, and having failed to obtain relief from the Kentucky appellate courts, Plaintiff seeks another bite at the apple by seeking to overturn the results of the state court proceedings in this forum. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claims against the Defendants pursuant to the *Rooker-Feldman* Doctrine, and the claims will be **DISMISSED**.

### J.  Motion for Service of Process by US Marshals

Plaintiff requests leave of the Court for an order directing the United States Marshal's Service to serve her amended complaint in this matter. However, in a pleading filed on January 13, 2014 [R. 101], Plaintiff states that the motion is now moot. Accordingly, the Court will **DISMISS** the motion.

**K.  Emergency Motion for Order of Protection**

Plaintiff moves the Court for an emergency order of protection from the Kentucky Attorney General's Office and Military Affairs employees for herself and her brother Ralph Mischler.  In support of her motion, Plaintiff states that verbal threats were made against her and her brother by employees of Kentucky's Military Affairs on December 27, 2013.

First, the Court notes that the motion is asking relief for Ralph Mischler.  Mr. Mischler is not a party to this action; therefore, the Court does not have jurisdiction to grant relief to him.

Next, Defendants have responded that Military Affairs employees are not affiliated or employed by the Office of the Kentucky Attorney General.  The Office had no knowledge of any such "threats", had no control over employees of Military Affairs or members of the American Legion, and did not sanction any such "threats" against Plaintiff or her brother.  Moreover, the Kentucky Military Affairs Office is not a party to this action,

Plaintiff does not allege that any party to this action has made a physical threat against her.  The Office of the Attorney General is unaware of any pending criminal actions against Plaintiff and no requests for extradition of Plaintiff have been submitted to the Governor. Plaintiff has not shown that she is entitled to an order of protection from the Office of the Attorney General.  Accordingly, the Court finds Plaintiff's motion for an order of protection without merit, and it is **DENIED.**

In light of the foregoing discussion, the following action is taken:

24

1.    The motion to dismiss or alternatively, for summary judgment, filed by Larry Thompson, Janie Wells, John David Preston, Ann Pinson, Claudia King, Jennifer Gillespie, and Debbie Reynolds [R. 76] is **GRANTED**, and they are dismissed as Defendants in this action.

2.    The motion to dismiss filed by Julie Paxton and David Deskins [R. 77] is **GRANTED**, and they are dismissed as defendants in this action.  Plaintiff's motion to disqualify counsel, Brian Cumbo, Tad Thomas, and the Kentucky Attorney General's Office [R. 70] is **DENIED**.

3.    The motion to dismiss filed by John D. Minton, Jr. and Joseph E. Lambert [R. 75] is **GRANTED,** and they are dismissed as Defendants in this action.  Plaintiff's motion to show cause why Thompson and Minton did not notice the District Court of a conflict of interest [R. 69] is **DENIED**.  Plaintiff's motions to disqualify Mark Overstreet and Stites & Harbison from representation of Defendants in this matter [R. 72, 108] are **DENIED**.  Plaintiff's motions to show cause directed at John D. Minton, Jr. [R 111, 112, 113] are **DENIED.**

4.    The motion to dismiss filed by Stephen D. Wolnitzek [R. 78] is **GRANTED,** and he is dismissed as a Defendant in this action.  Plaintiff's motion to disqualify Defendant Wolnitzek's counsel, George Rabe, [R. 71] is **DENIED**.

5.    Plaintiff's motion for service of process by US Marshals [R. 86] is **DENIED** as moot.

6.    Plaintiff's emergency motion for order of protection [R. 88] is **DENIED.**

IT IS SO ORDERED.

Enter:

s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE